**FILED**
**CLERK**

9/21/2012 4:07 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
PARVIZ FARAHZAD,

                              Plaintiff,

        -against-                          MEMORANDUM & ORDER
                                           10-CV-6010(JS)(AKT)
LAWYERS TITLE INSURANCE COMPANY and
FIDELITY NATIONAL TITLE INSURANCE
COMPANY,

                              Defendants.
----------------------------------------X
APPEARANCES
For Plaintiff:      Christopher P. Ring, Esq.
                    Tsunis Gasparis Lustig and Ring, LLP
                    2929 Expressway Drive North
                    Islandia, NY 11749

For Defendants:     Margaret A. Keane, Esq.
                    Sebastian L. Miller, Esq.
                    Dewey & LeBouef LLP
                    1950 University Avenue, Suite 500
                    East Palo Alto, CA 94303

SEYBERT, District Judge:

        Plaintiff Parviz Farahzad ("Plaintiff") commenced this

action on October 8, 2010 in New York State Supreme Court,

Suffolk County against Defendants Lawyers Title Insurance

Company ("LTIC") and Fidelity National Title Insurance Company

("FNT," and together with LTIC, "Defendants") asserting state

law claims for breach of contract, negligence, fraud, and

conversion.  Defendants removed the action to federal court on

December 28, 2010 on the grounds of diversity jurisdiction, and

on March 10, 2011 this case was transferred to the United States

District Court for the District of South Carolina for consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407 by the United State Judicial Panel on Multidistrict Litigation. On September 30, 2011, Defendants moved to dismiss the Complaint in the District of South Carolina, and on March 12, 2012 the action was remanded to the undersigned.  Defendants' motion to dismiss is now pending before this Court.  For the reasons that follow, the Court GRANTS Defendants' motion.

BACKGROUND[1]

On June 26, 2008, Plaintiff entered into 1031 Exchange Agreement (the "Agreement") with non-party LandAmerica Exchange Services ("LES"), whereby LES agreed to act as a qualified intermediary for Plaintiff to facilitate a "like-kind" exchange pursuant to Section 1031 of the Internal Revenue Code.  (Compl. Ex. A.)  The Agreement provided that all communications with LES be directed to Andrea Levine (Compl. Ex. A. § 9), who, according to the Complaint, was also an employee of Defendant LTIC (Compl. ¶ 10).  Both LES and LTIC were subsidiaries of non-party LandAmerica Financial Group; however, only LES was a party to the Agreement (Compl. Ex. A).

---

[1] The following facts are taken from the Complaint and the documents attached thereto and referenced therein, including the docket in In re LandAmerica Financial Group, Inc., No. 08-BK-35994 (Bankr. E.D. Va.) [hereinafter "Bankr. Docket"], and are presumed to be true for the purposes of this Memorandum and Order.  See infra pages 5-6.

Pursuant to the Agreement, on July 8, 2008 Plaintiff sold a parcel of real property that he owned for investment purposes and transferred the proceeds, totaling $1,492,355, to LES. (Compl. ¶¶ 4, 7, 10.) The Complaint alleges that LTIC: (i) wrongfully instructed LES to "deposit Plaintiff's monies into an account at Sun Trust Bank commingled with other 1031 exchanges instead of segregating said monies in Chase [Bank] in Plaintiff Farahzad's name as instructed in writing by Plaintiff" (Compl. ¶ 14); (ii) "knew or should have known" that LES had invested Plaintiff's (and other's) escrowed funds in auction rate securities that were illiquid as of February 2008 (Compl. ¶ 21); and (iii) together with LES, engaged in a Ponzi scheme whereby they continued to process new 1031 exchange agreements to cover expenses associated with older 1031 exchange agreements (Compl. ¶¶ 22-23).

On November 26, 2008, both LandAmerica Financial Group and LES filed voluntary petitions for Chapter 11 Bankruptcy in the United States Bankruptcy Court for the Eastern District of Virginia (the "Bankruptcy Court").[2] On December 22, 2008, pursuant to an order of the Bankruptcy Court, LandAmerica

_____

[2] Although LandAmerica Financial Group and LES filed separate petitions (see Bankr. Docket Entry No. 1 (LandAmerica Financial Group's petition); In re LandAmerica 1031 Exchange Services, Inc., No. 08-BK-35995 (Bankr. E.D. Va. 2008), Docket Entry No. 1 (LES's petition)), the two cases were jointly administered under Docket No. 08-BK-35994 (see Bankr. Docket Entry No. 31 (order of joint administration)).

Financial Group sold LTIC to Defendant FNT.  (Compl. ¶ 16; <u>see</u> <u>also</u> Bankr. Docket Entry No. 1017.)

A joint Chapter 11 plan (the "Plan") was submitted to the Bankruptcy Court on September 9, 2009.  The Bankruptcy Court held a Plan confirmation hearing on November 18, 2009 and issued an order confirming the Plan three days later on November 23. (Bankr. Docket Entry Nos. 2634, 2666.)  As a result of Plaintiff's filing a claim with the Bankruptcy Court, on December 22, 2009 he received $359,496.16 under the Plan "regarding his 1031 claim against LES, leaving a balance of $1,132,858.84" (Compl. ¶ 26).

On October 8, 2010, Plaintiff commenced this action against LTIC and FNT seeking $1,132,858.84 in damages.  He asserts two causes of action: one for "breach of contract/negligence" (Compl. ¶¶ 14-18) and the other for "fraud and conversion" (Compl. ¶¶ 19-32).

<u>DISCUSSION</u>

Defendants have moved to dismiss on the grounds that: (1) Plaintiff lacks standing, (2) the claims are barred under the doctrine of <u>res</u> <u>judicata</u>, and (3) the Complaint fails to state a claim upon which relief may be granted.  Because

4

Plaintiff's claims are barred by <u>res judicata</u>,[3] the Court will not address the merits of Defendants' other arguments.

I.   <u>Standard of Review</u>

In deciding Rule 12(b)(6) motions to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); <u>accord</u> <u>Harris v. Mills</u>, 572 F.3d 66, 71-72 (2d Cir. 2009). <u>First</u>, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555, S. Ct. 1955, 167 L. Ed. 2d 929 (2007)); <u>accord</u> <u>Harris</u>, 572 F.3d at 72. <u>Second</u>, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss. <u>Iqbal</u>, 556 U.S. at 679 (citing <u>Twombly</u>, 550 U.S. at 556). Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id.</u> (citation omitted); <u>accord</u> <u>Harris</u>, 572 F.3d at 72.

---

[3] The Court notes that Plaintiff did not address Defendants' <u>res judicata</u> argument in his Opposition.

In deciding a motion to dismiss, the Court is confined to "the allegations contained within the four corners of [the] complaint." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998). This has been interpreted broadly to include any document attached to the Complaint, any statements or documents incorporated in the Complaint by reference, any document on which the Complaint heavily relies, and anything of which judicial notice may be taken, see Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002); Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991), including the Bankruptcy docket, see Vaughn v. Consumer Home Mortg. Co., 470 F. Supp. 2d 248, 256 n.8 (E.D.N.Y. 2007) ("[C]ourts may take judicial notice of court records."); see also Anderson v. Rochester-Genesee Reg'l Transp. Auth., 337 F.3d 201, 205 n.4 (2d Cir. 2003) (collecting cases). Consideration of matters beyond those just enumerated requires the conversion of the Rule 12(b)(6) motion to dismiss into one for summary judgment under Rule 56. See FED. R. CIV. P. 12(d); see also Kramer, 937 F.2d at 773.

"Dismissal under [Rule] 12(b)(6) is appropriate when a defendant raises claim preclusion . . . as an affirmative defense and it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 86 (2d Cir. 2000).

II.  Res Judicata

It is well-settled that "[t]he doctrine of res
judicata applies in the bankruptcy context." First Union
Commercial Corp. v. Nelson, Mullins, Riley & Scarborough (In re
Varat Enters., Inc.), 81 F.3d 1310, 1315 (4th Cir. 1996) (citing
Brown v. Felsen, 442 U.S. 127, 132, 99 S. Ct. 2205, 60 L. Ed. 2d
767 (1979)); see also EDP Med. Computer Sys., Inc. v. United
States, 480 F.3d 621, 624-25 (2d Cir. 2007); Corbett v.
MacDonald Moving Servs., Inc., 124 F.3d 82, 87-88 (2d Cir.
1997). To determine whether res judicata bars a subsequent
action, the Court must consider whether:  "1) the prior decision
was a final judgment on the merits, 2) the litigants were the
same parties, 3) the prior court was of competent jurisdiction,
and 4) the causes of action were the same." Corbett, 124 F.3d
at 88.  In the Second Circuit, the Court must also consider
"whether an independent judgment in a separate proceeding would
'impair, destroy, challenge, or invalidate, the enforceability
or effectiveness' of the reorganization plan." Id. (quoting
Sure-Snap Corp. v. State St. Bank & Trust Co., 948 F.2d 869,
875-76 (2d Cir. 1991)).  This last inquiry, however, is
typically "viewed as an aspect of the test for identity of the
causes of action." Id.

Here, there is no doubt that the Bankruptcy Court's
confirmation order constitutes a final judgment on the merits by

a court of competent jurisdiction.  See Celli v. First Nat'l Bank of N. N.Y. (In re Layo), 460 F.3d 289, 294 (2d Cir. 2006); In re Frank's Nursery & Crafts, Inc., No. 04-BK-15826, 2006 WL 2385418, at *5 (Bankr. S.D.N.Y. May 8, 2006).  At issue, then, is whether there is identity of parties and identity of claims.

A.   Identity of Parties

For res judicata purposes, a participant in a bankruptcy proceeding is considered a party to the proceeding. See Ledford v. Brown (In re Brown), 219 B.R. 191, 194 (B.A.P. 6th Cir 1998) ("Courts have held in the context of bankruptcy matters that not only formally named parties, but all participants in the bankruptcy proceedings are barred by the doctrine of res judicata from asserting matters they could have raised in the bankruptcy proceedings." (collecting cases)); Laddin v. Belden (In re Verilink Corp.), 408 B.R. 420, 429 (Bankr. N.D. Ala. 2009) ("All participants in a bankruptcy proceeding, whether named parties or not, are barred by res judicata from asserting matters that could have been raised during the course of the bankruptcy proceeding." (citing In re Micor-Time Mgmt. Sys., Nos. 91-2260, 91-2261, 1993 WL 752, at *4 (6th Cir. Jan. 12, 1993)), rev'd on other grounds, 410 B.R. 697 (N.D. Ala. 2009); Newby v. Enron Corp. (In re Enron Corp. Sec., Derivative & ERISA Litig.), No. MDL-1446, 2008 WL 3509840, at *2, (S.D. Tex. July 25, 2008) (holding that defendants were

bound by the confirmed reorganization plan under principles of res judicata because they "participated in the bankruptcy proceeding" (citing Corbett, 124 F.3d at 89)).

Here, both Plaintiff[4] and Defendants[5] were participants in the bankruptcy proceeding, and therefore, for the purposes of the Court's res judicata analysis, were parties to that proceeding.

B.   Identity of Claims

Claims are identical for the purposes of the Court's res judicata analysis if they "could have or should have [been] raised before confirmation of a bankruptcy plan." In re Varat, 81 F.3d at 1315 (citations omitted); see also Sure-Snap, 948 F.2d at 873-74 (stating that res judicata "bars re-litigation not just of those claims which were brought in a prior proceeding, but of 'any other admissible matter' which could have been brought, but wasn't" (quoting Comm'r of Internal Revenue v. Sunnen, 333 U.S. 591, 597, 68 S. Ct. 715, 92 L. Ed.

---

[4] (See, e.g., Bankr. Docket Entry No. 745 (notice of appearance in the Bankruptcy Court filed on Plaintiff's behalf); Bankr. Docket Entry No. 2570 (indicating that Plaintiff was served with notice of the confirmation hearing); Compl. ¶ 26 (Plaintiff, by his own admission, received $359,496.16 from the bankruptcy court).)

[5] (See, e.g., Bankr. Docket Entry Nos. 65 (notice of appearance in the Bankruptcy Court filed on behalf of FNT); Bankr. Docket Entry No. 3706 (motion filed by LTIC); Bankr. Docket Entry No. 3724 (application filed by LTIC's counsel for permission to appear pro hac vice).)

898 (1948)).   Whether a claim could have or should have been
raised in the earlier proceeding "depends in part on whether the
same transaction or connected series of transactions is at
issue, whether the same evidence is needed to support both
claims, and whether the facts essential to the second were
present in the first." NLRB v. United Techs. Corp., 706 F.2d
1254, 1260 (2d Cir. 1983); see also Corbett, 124 F.3d at 89.
The Court finds that there is identity of claims in the present
case.[6]

     First, the alleged facts giving rise to Plaintiff's
claims--namely that, pursuant to a 1031 exchange agreement with
LES, his money was held at Sun Trust Bank and invested in

---

[6] The Court, before discussing what claims Plaintiff could have
brought in the bankruptcy proceeding, finds a brief discussion
of the jurisdiction of the bankruptcy court worthwhile.   The
Bankruptcy Code provides that bankruptcy judges may enter final
judgments in "all core proceedings arising under title 11, or
arising in a case under title 11." 28 U.S.C. § 157(b)(1).
Bankruptcy courts may also hear issues that are related to non-
core proceedings, but they are generally limited to making
recommendations to the district court. Id. § 157(c)(1).   The
Second Circuit has held that for the purpose of res judicata
there is no distinction between core and non-core proceedings;
in other words, res judicata will be determined by analyzing
whether a present claim--regardless of whether it would have
been characterized as core or non-core by the bankruptcy court--
is related to the same facts or transactions raised in the
bankruptcy proceeding such that it could have, and therefore
should have, been raised there. See Sure-Snap, 948 F.2d at 873-
75; see also Plotner v. AT&T Corp., 224 F.3d 1161, 1172-73 (10th
Cir. 2000) (collecting cases).   Accordingly, the Court need not
decide whether Plaintiff's claims herein would have constituted
core or non-core proceedings in the bankruptcy court as it has
no relevance to the Court's analysis.

auction rate securities which were rendered illiquid and inaccessible after the auction rate securities market was seized in February 2008--were central to the Bankruptcy Court proceeding. See, e.g., In re LandAmerica Fin. Grp., Inc., No. 08-BK-35994, 2009 WL 1269578, at *15 (Bankr. E.D. Va. May 7, 2009) (summary judgment decision rendered by the Bankruptcy Court determining that the funds held by LES pursuant to 1031 exchange agreements were considered property of the bankruptcy estate).[7]

Second, as all of Plaintiff's claims arise out of the Agreement with LES--an agreement to which Defendants were not parties--Plaintiff is seeking to recover against LTIC (and FNT and LTIC's successor-in-interest based on a theory of alter-ego

---

[7] The Bankruptcy Court, in summarizing the underlying facts, stated, in relevant part:

> In the ordinary course of its business, LES invested certain of the exchange funds that it received from its former customers and which it had deposited in [its account with Sun Trust Bank]. Some of the invested exchange funds received by LES are now held in the form of illiquid auction rate securities as a result of the unprecedented recent and rapid economic decline. As a consequence, LES does not have the ability from a liquidity standpoint to fund all the exchanges it is contractually obligated to complete within the time parameters that § 1031 of the Internal Revenue Code requires . . . .

Id. at *4 n.4.

liability.   (See  Pl.  Opp.  7-8.)   Therefore,  although  Plaintiff
has  not  named  LES  as  a  defendant  in  this  action,  his  claims
against  Defendants  will  necessarily  involve  an  analysis  of  LES's
liability  to  Plaintiff--an  analysis  which  without  a  doubt
belongs  in  the  Bankruptcy  Court.   See  S.G.  Phillips
Constructors,  Inc.  v.  City  of  Burlington  (In  re  S.G.  Phillips
Constructors,  Inc.),  45  F.3d  702,  705  (2d  Cir.  1005)  ("[N]othing
is  more  directly  at  the  core  of  bankruptcy  administration
.  .  . than  the  quantification  of  all  liabilities  of  the
debtor  .  .  .  ."  (internal  quotation  marks  and  citation
omitted)).

     Finally,  a  judgment  in  Plaintiff's  favor  would
effectively  challenge  the  Plan,  which  was  based,  at  least  in
part,  on  FNT's  purchase  of  LTIC.   FNT,  in  purchasing  LTIC
pursuant  to  an  order  of  the  Bankruptcy  Court,  issued  LandAmerica
Financial  Group  3,176,260  shares  of  its  own  common  stock--which,
when  liquidated,  were  available  for  distribution  to  creditors,
including  Plaintiff,  in  the  Plan.   (See  Bankr.  Docket  Entry  No.
918.)[8]   Thus,  to  allow  Plaintiff's  present  claims  against  FNT
would  potentially  impair  the  Plan,  because,  had  those  claims
been  properly  raised  during  the  bankruptcy  proceeding,  the  Plan
likely  would  have  been  structured  differently.   See  Sure  Snap,

---

[8] On February 12, 2009 the stock was trading at $18.24 per share,
which means that FNT had contributed to the estate an asset
worth over $24 million.

948 F.2d at 876 (holding that it would impair the effectiveness of a reorganization plan to allow claims that, if raised when they should have been, may have resulted in the bankruptcy court structuring the disposition of assets and schedule of payment differently, even if the claims were not technically inconsistent with the bankruptcy court's decision).

<u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion to dismiss is GRANTED, and Plaintiff's Complaint is DISMISSED WITH PREJUDICE.  The Clerk of the Court is directed to enter judgment consistent with this Memorandum and Order and to mark this matter CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Dated:     September  21  , 2012
           Central Islip, New York